PETTIGREW, J.
12Plaintifi/appellant, Trans Pacific Interactive, Inc. (TPI), challenges the district court’s September 24, 2015 judgment that sustained the exception raising the objection of prescription/peremption filed by Stephen D. Gavin (Gavin) and Patton Boggs, L.L.P., the defendants/appellees, *1059 dismissing - all of TPI’s claims against them, with prejudice, at TPI’s cost.[1] The judgment was certified as final by the district court, noting that there was no just reason for delay, and is now before us on appeal.[2]
BRIEF SUMMARY OF THE LITIGATION
This matter has become a lengthy and protracted litigation. It has been the subject of three prior appeals to this court. It is before us again on issues separate, yet related, to those before us in the most recent prior appeal. In Trans Pacific Interactive, Inc. v. U.S. Telemetry Corp., 2010-0507 (La.App. 1 Cir. 12/29/10), 2010 WL 5545406 (unpublished), writ granted, 2011-0205 (La. 4/8/11), 61 So.3d 672, writ grant recalled as improvidently granted, 2011-0205 (La. 9/23/11), 74 So.3d 210 (per curiam) (sometimes hereinafter referred to as “TPI 3”), TPI appealed a district court judgment that sustained exceptions filed by the same defendants/appellees herein (Gavin and Patton Boggs), raising the objections of no cause of action and prescription/peremption, and dismissing TPI’s claims against them. That decision, which reversed and remanded the matter back to the district court, will be discussed more fully later herein. On remand, Gavin and Patton Boggs re-urged the same exceptions, presenting additional evidence. The district court again sustained the exception of prescription/peremption and that judgment is before us on appeal.
lnEssentially, underlying the entire litigation are TPI’s claims that it was misled and induced by multiple defendants into agreeing to an exchange in which TPI gave up valuable property — a Federal Communications Commission (FCC) license and a 50 percent ownership interest in .a joint venture to exploit U.S. Telemetry Corporation’s (USTC’s)-wireless technology in and around Bakersfield, California— in exchange for shares of common stock in USTC that TPI now claims were, in fact, worthless, unbeknownst to TPI due to many of the defendants’ alleged acts of misrepresentation, fraud, and breaches of contractual duties..
FACTUAL BACKGROUND
In July 1994, at a public auction, TPI paid the FCC $450,000.00 for an Interactive Video and Data Services license (IVDS) to utilize the wireless radio bandwidth between 218 and 219 Megahertz (MHz) in and around Bakersfield, California (the Bakersfield license). At the time of the FCC auction, the technology available to use- the license was inadequate. Later, in 1999, USTC obtained numerous other IVDS licenses throughout the country, in an effort to develop a national network.
TPI is owned by three individuals: Laura Monahan, Cynthia Carter, and Michael Morrison. Monahan and Carter each own 45 percent of the company, and Morrison owns the remaining 10 percent. Morrison is an attorney licensed to practice law in Nevada and has represented himself as an attorney for TPI since June 2000.
Since the early 1980s, Gavin (who was then a member of the law firm Besozzi, Gavin,- and Craven, in Washington, DC), represented TPI’s principals, Laura Mona- *1060 han and Cynthia Carter, with respect to all the FCC broadcast and business interests. As such, Gavin represented TPI in connection with the Bakersfield license from the date of purchase forward. On July 29, 1994, Gavin’s law firm entered into a Representation Agreement with TPI to specifically formalize its “ongoing representation” of TPI in connection with the Bakersfield license on FCC related matters. The agreement also specified other contractual terms (i.e., charges, billing, etc.), none of which are at issue herein. The record reflects, by way of email from Patton Boggs to TPI, dated April 24, 2002, that the representation ceased, and TPI’s account with Patton Boggs was closed. It |4is undisputed by the parties that neither Gavin nor the firms for which he worked were licensed to practice law in Louisiana.[3] However, the parties do dispute whether that fact alone (lack of licensure in Louisiana) is solely determinative of whether Louisiana’s legal malpractice statute (La. R.S. 9:5605) applied, and Gavin and Patton Boggs also dispute the extent and length of their legal representation of TPI, as more fully discussed below.
In 1998 and 1999, USTC began working with Axonn Corporation (Axonn), a New Orleans, Louisiana company, to convert remote telemetry monitoring technology, previously developed by Axonn for other radio spectra, for use by USTC. Anticipating its use of the 218-219 MHz spectrum at relatively little cost, USTC signed an agreement with Axonn for the exclusive use of the Axonn technology. Due to USTC’s exclusive relationship with Axonn, licensees such as TPI were barred from contracting with Axonn except through USTC.
In 1999, USTC, through, its wholly-owned subsidiary, defendant U.S. Telemetry Network, Inc. (USTN), entered into contracts known as System Development Agreements (SDAs) with 126 IVDS license holders throughout the country, including TPI. TPI executed an original SDA on July 12, 1999, with Adtel, Inc., a predecessor of USTC, and subsequently signed a revised SDA with USTN, effective May 23, 2000. The SDA provided that TPI agreed to assign its license to a market-specific entity or “MSE” (the market being the geographic market covered by the license), in exchange for a 50 percent ownership interest in the MSE. USTC agreed to assign to the MSE the exclusive rights to employ its telecommunications technology in the Bakersfield market, and USTC or USTN would own the other 50 percent of the MSE. Although the license holder and USTN would share ownership of the MSE, the MSE would be a new subsidiary of USTN that would be controlled by USTN, which had the authority to appoint a majority of the MSE’s board. It was further anticipated that in return for receiving control of TPI’s license, USTN would provide access to the Axonn technology that would allegedly provide | ^commercial applications for radio bandwidths covered by the license. The SDA anticipated a “merging event” at some point in the future, in which all of the MSEs would eventually be merged into a single company, with the ownership thereof determined by the formulas set forth in the SDAs.
In February 2000, USTN formed a limited liability company, U.S. Telemetry/Bakersfield, LLC. (UST/B). TPI contends it had no knowledge of the formation of this company until July 13, 2001, and *1061 alleges the failure to inform is a violation of the SDA.
In 2001, Texaco Development Corporation (Texaco) operated two of the largest oil fields in the country in Bakersfield. Texaco estimated that USTC’s wireless technology could save it $2.7 million per year in operating costs in the Bakersfield oil fields alone. Texaco began negotiations with USTC to invest in USTC in exchange for the ownership of preferred stock, and entered into a Subscription Agreement with USTC that gave Texaco the control and power to direct the management and policies of USTC. (According to TPI, it wasn’t until May 18, 2001, that Monahan of TPI learned from John Broussard of Da-tex Spectrum, LLC (Datex), a company that had also executed a SDA with USTC/ USTN, of Texaco’s impending investment in USTC and of Texaco’s plan to build out in Bakersfield.) In June 2001, Texaco invested $5 million in USTC preferred stock and obtained an option to invest an additional $5 million in USTC common stock, with the first $1 million earmarked to build out USTC infrastructure to serve Texaco, nonexclusively, in Bakersfield. Texaco also agreed to pay for the equipment needed to test USTC’s technology in Texaco’s Bakersfield oil fields. On June 3, 2001, the Chairman of the Board of USTC informed Monahan of Texaco’s involvement with USTC and that Texaco had chosen the Bakersfield market to deploy the USTC technology.
TPI then hired Van Mayhall, legal counsel for Datex, which was in negotiations with USTC on a new SDA, as additional counsel for TPI, for the limited purpose of helping TPI review the revised SDA. On June 12, 2001, Mayhall informed TPI that it was operating on an outdated SDA. However, when Datex became interested in a “roll-up” (exchanging its license for stock in USTC) and became involved in attempting to persuade TPI to | ^exchange its license for stock in USTC, a conflict of interest arose, and on September 13, 2011, Mayhall resigned as counsel for TPI.
On June 20, 2001, the FCC granted an Experimental Special Temporary Authorization Permit to allow USTC and Texaco to test ’ equipment in TPI’s Bakersfield market, without TPI’s knowledge or consent. TPI alleged that the permit application was filed by K. Steven Roberts, on behalf of USTC, and signed by TPI’s attorney, Gavin, who had been TPI’s counsel for FCC-related matters since TPI acquired the license in 1994, without TPI’s knowledge or consent. TPI contends that, despite the fact that Gavin was representing it, he never informed TPI of the FCC transfer application.
Ultimately, TPI entered into an Act of Exchange Agreement with defendant Da-tex on December 1, 2Q01. Datex was the owner of numerous IVDS .licenses subject to SDAs with USTC/USTN, and was also a major stockholder of USTC. The Exchange Agreement between TPI and Da-tex provided for the transfer of TPI’s rights under the SDA, including its IVDS license, to Datex in exchange for 14,360 shares of USTC stock from USTC and 14,360 shares of USTC stock from Datex, together with $28,000.00 in cash, representing a reimbursement for an earlier installment payment TPI made to the FCC for the Bakersfield license.
According to TPI, this exchange resulted in TPI no longer owning its FCC license or its 50 percent ownership interest in the MSE formed to develop the Bakersfield market; no longer having any right to the revenues that might have been generated from the arrangement with Texaco; and finally, being left with worthless stock in USTC. TPI contends the following misrepresentations were made by Datex and USTC/USTN in order to induce it to sign *1062 the exchange agreement: (1) USTC owned 100 percent control of the IVDS markets in New York City, Los Angeles, Boston, and Detroit; (2) that USTC was well-financed and had sufficient capital to execute its business plan; and (3) USTC had ^acquired 126,059,591 POPs[4] and committed to invest or raise an additional total of $50 million to build and support its national network.
However, TPI alleged that USTC, USTN, and Datex all knew, despite the foregoing representations, that: (1) USTC did not have 100 percent control of New York City, Los Angeles, Boston, and Detroit IVDS markets; (2) USTC did not have ownership of “anywhere near” the 126,059,591 POPs, such that TPI’s stock share was significantly and arbitrarily' diluted; (3) USTC’s financial condition was so disastrous with little or no ability to raise additional funds that it had discussed bankruptcy; and (4) USTC planned, and did,' relinquish numerous, significant, and valuable IVDS licenses representing millions’ of POPs back to the FCC.
PROCEDURAL HISTORY
On May 15, 2003, TPI filed suit in the 19th Judicial District Court naming as defendants four corporations, USTC, USTN, UST/B, Datex, and ten individuals. Nine of the ten individually named defendants were alleged to be officers, directors, or outside counsel for the four named corporate defendants. The tenth individual defendant is Gavin, identified as an attorney (agent and employee of Patton Boggs), who at all pertinent times represented TPI as well as USTC and USTN, thus, allegedly creating a conflict of interest that contributed to TPI’s damages.
TPI’s petition set forth claims for rescission of contracts due to vices of consent (misrepresentations), breach of contract (acts of alleged legal malpractice), violations of Louisiana’s “Blue Sky” Laws (La. R.S. 51:701 et seq,), misrepresentation, conversion, and conspiracy. Specifically, TPI alleged that USTC, USTN, and Datex breached their contracts with TPI with respect to TPI’s wireless communications license; committed securities violations under La. R.S. 51:712(A) and La. R.S. 51:714(A) and (B), in connection with the exchange agreement whereby TPI was induced to transfer its Bakersfield license to Datex in exchange for USTC stock; made negligent and intentional misrepresentations' to TPI; Land wrongfully converted TPI’s FCC license. TPI alleged that the ten individual defendants (including Gavin) were participants and co-conspirators in the same scheme. (We note that Gavin was expressly excluded from TPI’s allegations that the defendant companies’ directors were solidarity liable pursuant to La. R.S. 51:714(B) of Louisiana ’s “Blue Sky” Laws.) TPI alleged additionally that Gavin breached his fiduciary obligations as legal counsel, by acting as counsel for TPI, while also acting as counsel for USTC and USTN. TPI further alleged that Gavin conspired with the other defendants in making misrepresentations,, committing breaches of contract, and wrongfully converting TPI’s license, in violation of his obligations as TPI’s attorney. TPI further claimed that the SDA between it and USTC and USTN, as well as the Act of Exchange between it and Datex and USTC, should be rescinded on the basis of vice of consent due to error, fraud, and misrepresentations.
*1063 TPI filed three amending petitions, partly in response to exceptions that raised objections of vagueness alleging TPI’s failure to plead its fraud allegations with particularity. On August 2, 2004, TPI filed its first amended petition to name two additional individual defendants and two additional corporate defendants affiliated with Texaco (the Texaco defendants). On November 19, 2007, TPI filed its second amended petition to allege with greater particularity its claims against the new Texaco defendants. On January 16, 2009, TPI filed its third amended petition to add Gavin’s law firm, Patton Boggs, as a defendant, and, to respond to the court’s order of December 8, 2008, requiring TPI to allege with more particularity, the fraud and conspiracy claims against Gavin.[5]
Although Gavin was named asi a defendant in TPI’s original petition, it was the third amending petition that pled specific facts underlying TPI’s claims of fraud and conspiracy against Gavin, and for the first time named Patton Boggs as-a defendant. TPI claimed that Gavin represented it, as well as USTC and USTN, whose interests were |fladverse to TPI’s, creating a prohibited conflict of interest. TPI further alleged that Patton Boggs, a Washington, D.C. law firm, was not licensed as a firm to practice in Louisiana. In 37 additional paragraphs of allegations specifically aimed at Gavin and Patton Boggs, TPI alleged that Gavin and Patton Boggs had a long-standing relationship as legal counsel for TPI and represented TPI as its attorney for years on all FCC and business matters related to its Bakersfield license. TPI alleged that eventually, Gavin and Patton Boggs represented both USTC’s interest and TPI’s interest with respect to filings and dealing with the FCC in connection with the Bakersfield license, which interests were clearly adverse, but neither Gavin nor the firm informed TPI of the dual representation and conflict of interest. TPI also alleged the dual representation constitutes a violation of the Louisiana Code of Professional Responsibility and the American Bar Association (ABA) Model Rules of Conduct.
Because the allegations of fact asserted against Gavin and Patton Boggs in the petition are critical to resolving the propriety of sustaining or denying their exception, albeit numerous, they must be summarized below for an understanding of that determination and resolving the issues raised:
• When USTC applied to the FCC for transfer of the Bakersfield license from TPI to UST/B in April 2001, it was represented by Paul Besozzi of Patton Boggs, and TPI was not informed about the representation or the filing of the application.
• Despite his representation of TPI, in October 2001, Gavin advised USTC of a menu of options for dealing with TPI’s unwillingness to agree to and close on the assignment of its license to UST/B, none of which were options beneficial to TPI, and some of which included initiating litigation against TPI to force its cooperation.
• In October 2001, Monahan of TPI sent an email to Gavin and Patton Boggs, reminding them that they were TPI’s retained counsel (since the early 1980s) concerning all FCC related matters, including the Bakersfield license.
• Despite documentary evidence to the contrary, in November 2001, Gavin in *1064 formed TPI through Monahan that “Patton Boggs, LLP[,] does not now and has never represented TPI regarding the acquisition of TPI’s Bakersfield license. Patton 110Boggs, LLP is representing USTC in connection with the Bakersfield, license assignment application and other regulatory matters.”
• In November 2001, Monahan refuted Gavin’s claims, maintaining that Patton Boggs had been representing TPI for years.
• On March, 15, 2001, without TPI’s knowledge or consent (in violation of the SDA), K. Steven Roberts (USTC) and Gavin fraudulently and illegally signed the application for an “Experimental Special Temporary Authorization” (STA) from the FCC authorizing operation of TPI’s Bakersfield license despite that the FCC required the consent of TPI, as the license holder.
• Gavin and Patton Boggs represented USTC in connection with USTC’s ef-' forts to induce TPI to trade its license for stock in USTC.
• In October 2001, Gavin/Patton Boggs sent a letter to TPI on behalf of USTC and USTN in an attempt to persuade TPI to sign the remaining documents to transfer its license. Gavin asserted that the FCC had granted a Final Order in connection with the assignment of the license, leading TPI to believe that it had no choice but to sign the documents.
• As USTC lawyers, Gavin and Patton Boggs had intimate knowledge of the operations and financial condition of USTC; they knew that ÚSTC planned to relinquish numerous significant and valuable IVDS licenses with debt representing millions of POPs back to the FCC because it was unable to make the upcoming payments to the FCC; they knew USTC’s financial condition was “so disastrous with little or no ability to raise additional funds [, and] that it had contemplated bankruptcy” yet, they failed to inform or share this information with TPI.
• Gavin and Patton Boggs knew that certain markets had not been transferred to USTC as represented by USTC to investors like TPI, but they failed to inform TPI. The inclusion of these markets in the calculations in TPI’s stock roll up by USTC, with the aid and knowledge of Gavin and Patton Boggs, resulted in an inflated POP count which diluted TPI’s share of stock in USTC. Moreover, Gavin and Patton Boggs knew that if TPI had> known of the serious financial condition of USTC, TPI [nwould not have traded its license for what turned out to be worthless stock in USTC; therefore, Gavin and Patton Boggs had a duty to disclose these facts to TPI, and they breached that duty.
Based on the foregoing factual allegations, TPI asserted the following claims against Gavin and Patton Boggs: (1) Rescission of Contracts due to Vice of Consent — Gavin and Patton Boggs (among others) are “guilty of misrepresentations, seeking an unjust advantage over [TPI] by seeking control of ... [TPI’s] license rights and the substantial revenues that flowed there from (sic) in exchange for worthless stock.” (2) Breach of System Development Agreement (SDA) — Gavin and Patton Boggs assisted USTC and USTN in breaching clause 6.02.4 of the SDA prohibiting USTN from undertaking any efforts to control the Assets when they obtained the “Experimental Special Temporary Authorization” from the FCC on June 20, 2001, to use TPI’s license, obtain *1065 ing revenue from Texaco and inducing investment by Texaco, all without TPI’s knowledge or consent. Further, Gavin and Patton Boggs assisted USTC’s and USTN’s breach of the SDA by forming a limited liability company also without TPI’s knowledge or consent. Finally, the SDA contracts required USTC to pay amounts due to the FCC in connection with the Bakersfield license, and the defendants breached the contract by not making those payments. (3) Negligent/Intentional Misrepresentation — Gavin and Patton Boggs assisted USTC and USTN in inducing TPI to sign agreements. to transfer its license or knowingly made false and misleading representations for the purpose of seeking an unjust advantage over TPI. (4) Conversion — Gavin and Patton Boggs contributed to the use of TPI’s license without TPI’s consent, constituting an unlawful conversion of TPI’s property. (5) Conspiracy/Breach of Fiduciary Duty/Attorney Malpractice — At all times, from before signing the SDA and through the signing of the Exchange Agreement, Gavin and Patton Boggs acted as counsel for TPI, while also aeting as counsel for USTC and USTN, in violation of the Louisiana Code of Professional Responsibility and ABA Model Rules of Professional Conduct, defining the ethical duties, which are tantamount to legal duties in a legal malpractice claim. Based on the foregoing claims, TPI alleged that Gavin and Patton Boggs are solidarily liable with all other | ^defendants for any and all damages arising from said acts. Finally, TPI alleged that Patton Boggs, as the employer of its employees/attorneys, was hable for Gavin’s acts.
As noted earlier, Gavin and Patton Boggs filed exceptions of no 'cause of action and prescription/peremption. The district court sustained those exceptions and dismissed TPI’s claims against Gavin and Patton Boggs. The district court’s judgment was based on its finding that the petition failed , to allege an attorney/client relationship between TPI and Gavin and Patton Boggs. TPI appealed that judgment, dated November 30, 2009, and signed December 2, 2009 (the subject of the appeal in TPI 3).
PRIOR APPEAL
In TPI 3, discussing and analyzing the exception of no cause of action, this court found that, accepting as true the well-pleaded allegations of fact contained in TPI’s petitions, TPI sufficiently stated a cause of action for recovery from Gavin and Patton Boggs in legal malpractice. Trans Pacific Interactive, Inc. v. U.S. Telemetry Corp., 2010-0507, (La. App. 1 Cir. 12/29/10) -(unpublished). Highly contested in that appeal was the district court’s finding that TPI had failed to prove that it had an attorney-client relationship with Gavin and with Patton Boggs at the relevant times. It was largely on that finding that the district court sustained the exception of no cause of action. Accordingly, the majority of this court’s opinion in TPI 3 was devoted to the correctness of the district court’s finding, which we ultimately concluded was error.
We found that it was evident from the record that there existed an attorney-client relationship between TPI'and Gavin and Patton Boggs. Id., at p. 8. Then, this court found that TPI’s third amending petition stated a cause of action for legal malpractice because Gavin and Patton Boggs “simultaneously provided legal representation to both TPI and USTC despite the fact that the interest of these parties were clearly adverse.” Id., at p. 8. This court then reversed the district court’s judgment and remanded the matter to the district court for further proceedings, pre-termitting discussion of all other issues. Id., at p. 9.
*1066 JjgPOST-REMAND ACTIVITY
Following this court’s remand, and after conducting additional and extensive discovery, Gavin and Patton Boggs, on June 13; 2015, again filed exceptions of prescription/peremption, and Patton Boggs additionally raised the objection of no cause of action. (Additionally, TPI filed a motion for leave to file a fourth amending and supplemental petition. That motion was denied.) The district court found this court’s prior ruling — that TPI had stated a cause of action against Gavin and Patton Boggs in legal malpractice — constituted law of the case, and did not revisit that issue.
However, the district court again sustained the exception of prescription/per-emption in open court, after a hearing that ended on September 16, 2015, and in a signed judgment dated September 24, 2015, dismissed TPI’s claims against Gavin and Patton Boggs. The district court found that the testimony and evidence at the hearing revealed that TPI was aware its attorneys had a conflict of interest before agreeing to the exchange' for USTC stock; Moreover, the district court found the evidence revealed that TPI had knowledge that it had been misled, possibly defrauded, and possibly damaged “as early as September, October, November 2001, but” had knowledge, “clearly by March 2002”, when Monahan and Carter received a letter to USTC’s shareholders informing them that USTC had abandoned 40 of its 126 FCC licenses, together with the associated debt — thus putting TPI on notice at that time of USTC’s deteriorating financial condition and that TPI may have been damaged and had enough facts to make a reasonable inquiry. The district court found no evidence that TPI initiated any such inquiry.
The district court further found that there was no. evidence presented whatsoever to support fraud allegations as to Gavin and Patton Boggs. The district court accordingly held the fraud exception to the peremption rule of La. R.S. 9:5605 was inapplicable, subjecting the ■ matter to a one-year peremptive period, and ruling that the matter, filed more than one year after the latest date (March 2002) that TPI had notice that it had been damaged, was thus perempted, dismissing the case as against Gavin and Patton Boggs, with prejudice, at TPI’s cost. In so deciding, the district court found “no basis | ^whatsoever, no substantive law or no exception, that would require [the application of D.C. law] as opposed to [La. R.S.] 9:5605” because the allegations of TPI’s petitions alleged violations of Louisiana’s “Blue Sky” Laws, as well as the Louisiana Code of Professional Responsibility.
TPI followed with a motion for new trial, claiming that the district court failed to address, TPI’s arguments that: (a) La. R.S. 9:5605 was not applicable to Gavin, a D.C. lawyer not licensed to practice law in Louisiana; therefore, (b) Louisiana ⅛ ten-year prescriptive period applied to TPI’s breach of fiduciary duty claims against Gavin and Patton Boggs. The district court denied the motion for new trial and TPI filed this appeal.
ASSIGNMENTS OF ERROR
On appeal, TPI asserts seven assignments of error as follows:
1. The district court erred as a matter of law by finding that the one-year-from-discovery peremption under La. R.S. 9:5605 began to run from the date TPI was on notice it had been damaged, without requiring proof of the “delict and the relationship between the delict and the damage.”
2. The district court compounded its legal error by committing manifest error in finding TPI had constructive notice in March 2002 that it was dam *1067 aged, based upon a letter to shareholders that was misleading and covered up the fraud.
3. The district court erred as a matter of law by applying peremption for suits against Louisiana-licensed lawyers (La. R.S. 9:5605) to Stephen Gavin, an attorney not licensed to practice law in Louisiana, and Patton Boggs, LLP, his D.C. firm which was sued under respondeat superior.
4. The district court erred as a matter of law by failing to require the exceptors to bear the burden of proving the absence of fraud under La. R.S. 9:5605(E), and erred as a matter of law and/or committed manifest error by failing to find the “case of fraud” exception to peremption applied.
5. The district court erred as a matter of law by failing to apply Louisiana’s ten-year prescriptive period for breach of fiduciary duty to TPI’s claims against Gavin and Patton Boggs, since peremption did not apply per Nos. 3 and 4 above.
6. The district court erred as a matter of law and committed manifest error by failing to apply contra non valentem to suspend the running of the prescription of One year.
7. Alternatively, the district court erred as a matter of law in holding that D.C. substantive law did not apply and in failing to hold D.C.’s three-year statute of limitations applied, pursuant to La. C.C. art. 3549.
hfiAlthough separated into seven assignments, the first six assignments of error urged by TPI all pertain to the issue of prescription: whether the district court’s application of Louisiana’s legal malpractice prescription statute, La. R.S. 9:5605, to resolve the issue was legal error; and if so, what is the proper applicable prescriptive period to TPI’s claims against Gavin and Patton Boggs. Therefore, we will discuss and analyze the first six assignments together.
In addition to responding -to TPI’s assignments and arguments, Gavin and Patton Boggs first urge this court to find' that the application of the law of the case doctrine applies, and thus, all issues relating to which statute dictates the applicable prescriptive period in this appeal are thereby resolved. According to the their law of the case argument, La. R.S. 9:5605 “was previously applied by [this court] in its decision of December 29, 2010, to deter;mine if TPI timely filed its malpracticé case against Gavin/Patton Boggs and, thus, is law of the case.” The appellees additionally urge that this court’s previous ruling in TPI 3 “that the peremptive period began to run on the day TPI discovered it had been damaged” is, likewise, law of the case.
Otherwise, in response to TPI’s appeal, Gavin and Patton Boggs assert that there is ample evidence in the record to support the district court’s factual findings and ultimate conclusion that TPI had more than sufficient notice of facts underlying its claims against Gavin and Patton Boggs, well before one year prior to filing suit. Therefore, the district court did not err in • sustaining the exception of prescription.
APPLICABLE LAW / DISCUSSION / ANALYSIS
Law of the Case Doctrine
The law of the case doctrine is a discretionary guide which relates to: (a) the binding force of a trial judge’s ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Louisiana Land *1068 and Exploration Co. v. Verdin, 95-2579 pp. 3-4 (La.App. 1 Cir. 9/27/96); 681 So.2d 63, 65, writ denied, 96-2629 (La. 12/13/96); 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997). It applies to all 1 ¶ fiprior rulings or decisions of an appellate court or the supreme court in the same case, not merely those arising from the full appeal process. Brumfield v. Dyson, 418 So.2d 21, 23 (La.App. 1 Cir.), writ denied, 422 So.2d 162 (La.1982). The reasons for the law of the case doctrine are to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Louisiana Land and Exploration Co. 95-2579 at 4; 681 So.2d at 65; Jones v. McDonald’s Corp., 97-2287 (La.App. 1 Cir. 11/6/98); 723 So.2d 492, 494-95. The doctrine is not an inflexible law, thus appellate courts are not absolutely bound thereby and may exercise discretion in its application. State ex rel. Div. of Admin., Office of Risk Management v. National Union Fire Ins. Co. of Louisiana, 2013-0375, p. 9 (La.App. 1 Cir. 1/8/14), 146 So.3d 556, 562-63. Moreover, the doctrine also is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice , would occur. Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc., 419 So.2d 1269, 1271 (La.App. 1 Cir.1982).
Defendants/appellees assert that in TPI 3, this court held that La. R.S. 9:5605 applied to the claims in legal malpractice against them, and therefore, the district court could not have erred by applying the statute, urging the application of the law of the case doctrine. The portion of the TPI 3 opinion the appellees rely on in urging application of law of the case concerns the district court’s sustaining a no cause of action exception based on its finding that no attorney/client relationship existed between TPI and Gavin and Patton Boggs, leading to the conclusion that TPI had not stated a cause of action against them in legal malpractice. Upon review by this court on appeal, we concluded that the record and pleadings before us on review had ample factual allegations of an attorney client relationship between the parties and, therefore, reversed the district court’s judgment and held that TPI had indeed stated a cause of action in legal malpractice against Gavin and Patton Boggs.
We acknowledge that the holding in TPI 3 contains the language “pursuant to La. R.S. 9:5605,” however, in that opinion, there is no discussion or analysis by this court |17(nor by the district court from which the judgment was appealed) of whether La. R.S. 9:5605 was applicable to Gavin and Patton Boggs, who undisputedly are Washington, D.C. attorneys not licensed to practice law in Louisiana. That issue was not raised nor reached, because, as stated, the sole issue before us in TPI 3 was whether the district court erred in its factual finding that an attorney client relationship did not exist based upon the pleadings. We did not consider whether La. R.S. 9:5605 was applicable under the facts pled in this case. Therefore, we assert the discretion afforded us and decline to find the law of the case applicable to the issue now raised in the appeal before us— whether La. R.S. 9:5605 is the applicable statute — on the basis that we did not address nor resolve the issue of the statute’s applicability in that opinion.
•Additionally, appellees argue the law of the case doctrine applies to this court’s earlier finding that the peremptive period began to run on the date of TPI’s discovery of damage. Inasmuch as we have declined to find the law of the case doctrine applicable to the issue of whether La. R.S. 9:5605 is the applicable statute for deter *1069 mining prescription, the correlative finding as to when the peremptive period of that statute begins to run falls naturally as well. Moreover, a prescription exception can be pleaded at any stage in the proceeding in the district court prior to a submission of the case for a decision. La. C.C.P. art. 928.B. As such, when the matter was remanded for further proceedings, Gavin and Patton Boggs re-urged the exception, this time providing much additional evidence in support of their assertion that the date of discovery was far earlier than what this court alluded to in TPI 3. Thus, any findings allegedly made by this court in the prior opinion concerning prescription and the date of TPI’s discovery that it had been damaged, by definition, could not be law of the case to a subsequent exception presented with additional evidence.
PRESCRIPTION
Applicable Law/General Principles
The judgment appealed, sustaining the exception of prescription/per-emption and dismissing TPI’s claims against Gavin and Patton Boggs, is subject to the manifest error standard of review. When prescription is raised by a peremptory exception, with evidence 11sintroduced at the hearing on the exception, the district court’s findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review. Specialized Loan Servicing, LLC v. January, 2012-2668 (La. 6/28/13), 119 So.3d 682, 584. This standard of appellate review is a two-part test: 1) the appellate court must find from the record whether there is a reasonable factual basis for the finding of the fact finder; and 2) the appellate court must further determine whether the record establishes the finding is not manifestly erroneous (clearly wrong). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). If the trial court’s or jury’s factual findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Consequently, when there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Stobart v. State, Through Department of Transportation & Development, 617 So.2d 880, 888 (La.1993); Sistler, 558 So.2d at 1112.
The objection of prescription/peremption may be raised by a peremptory exception. La. C.C.P. art. 927.A(1). On the trial of a peremptory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. Generally, in the absence of evidence, the exception of prescription must be decided based upon the facts alleged in the petition, which must be accepted as true. Kirby v. Field, 2004-1898, p. 6 (La.App. 1 Cir. 9/23/05), 923 So.2d 131, 135, writ denied, 2005-2467 (La. 3/24/06), 925 So.2d 1230. Ordinarily, the party pleading prescription bears the burden of proving the claim has prescribed. Hogg v. Chevron USA, Inc., 2009-2632, p. 7 (La. 7/6/10), 45 So.3d 991, 998. However, if a petition has prescribed on its face, the burden shifts to the plaintiff to show that the action has not prescribed. Wheat v. Nievar, 2007-0680, p. 4 (La.App. 1 Cir. 2/8/08), 984 So.2d 773, 775.
| lflGenerally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be *1070 extinguished by it. Bailey v. Khoury, 2004-0620, p. 9 (La. 1/20/05), 891 So.2d 1268, 1275.
Applicability of La. R.S. 9:5605
Primarily at issue is whether the district court erred in applying Louisiana’s legal malpractice prescriptive statute in determining whether TPI’s legal malpractice and other claims against Gavin and Patton Boggs are prescribed/perempted. In applying the statute in this case, the district court stated, “I see no basis whatsoever, no substantive law or no exception, that would require this Court to follow D.C, law as opposed to [La.] R.S. 9:5605, considering that the allegations against much of the defendants (sic) a violation of the Louisiana Blue Sky law, and Mr. Gavin and Patton Boggs were sued in the third supplemental and amending petition for violating the Louisiana Code of Professional Responsibility. I have no basis whatsoever to apply D.C. law to this case.” The district court also held that fraud had not been sufficiently alleged against Gavin and Patton Boggs; therefore, the exception to the peremption rule in La. R.S. 9:5606 did not apply. The district court went on to apply the one-year peremptive period in La. R.S. 9:5605. The district court held that TPI’s claims were perempted at the earliest, in late 2001, and at the latest, in March 2002, such that by the time suit was filed in May 2003, it was perempted.
The liberative prescriptive/peremptive period applicable to actions for legal malpractice in Louisiana are governed by La. R.S. 9:5605, which provides in relevant part, “A. No action for damages against any attorney at law duly admitted to practice in this state, .,. whether based upon tort, or breach of contract, or otherwise ... shall be brought unless filed ... within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered[.]” Based on the clear express language in the statute, it applies only to attorneys duly admitted to practice in this state. See Titus v. Wilson, 2015-0575 (La.App. 4 Cir. 12/4/2015), (— So.3d —, 2015 WL 7998292) (unpublished) (holding that “the one-year peremptive period provided by La. R.S. 9:5605 does not apply to an out-of-state attorney’s representation of a client”); see Lnalso, Brennan’s Inc. v. Colbert, 2008-2573 (La. 1/9/09), 998 So.2d 721 (where the supreme court denied writs on an unpublished fourth circuit case that held that the peremptive period of La. R.S. 9:5605 only applies to attorneys “duly admitted” in Louisiana.) In those cases, in determining whether the claims of legal malpractice levied against non-Louisiana lawyers, the courts applied the one-year prescriptive period applicable to delictual actions.
It is undisputed that Gavin is a Washington, D.C, attorney, and Patton Boggs is a Washington, D.C. law firm, and that neither are duly admitted to practice law in Louisiana. Therefore, the district court erred in applying La. R.S. 9:5605 in determining whether the claims against them had been perempted. We now address and determine the timeliness of TPI’s suit against Gavin and Patton Boggs under the appropriate statute.
Are TPI’s Claims against Gavin and Patton Boggs Prescribed?
TPI alleged numerous causes of action against the several defendants named in the suit. The following are the causes of action and facts TPI levied against Gavin and Patton Boggs, which the defendants maintain have prescribed: (1) rescission of contracts due to vice of consent — TPI claimed Gavin was among the persons guilty of misrepresentations, seeking an unjust advantage over TPI by seeking control of TPI’s license rights and the reve *1071 nues flowing therefrom. in exchange for worthless USTC stock; (2) breach of the SDA — TPI alleged that Gavin participated with USTC and USTN in breaching the obligation of good faith during the existence of the SDA by obtaining special authority to use TPI’s license (prior to the closing) thereby obtaining revenue from Texaco and inducing Texaco’s large investment, without notifying and obtaining consent from TPI; (3) negligent and intentional misrepresentations — allegedly Gavin and counsel for USTC, Paul Besozzi, also a Patton Boggs attorney, applied to the FCC for the transfer of TPI’s license to UST/B (to bolster Texaco’s interest and participation in the Bakersfield market), and were amopg the defendants that induced TPI to sign agreements to transfer its license based on representations that the defendants knew to be false and/or misleading, for the purpose of seeking an unjust advantage over TPI; |¾1(4) conversion — TPI alleged that Gavin was among the defendants who used TPI’s license without its consent; (5) conspiracy — TPI alleged Gavin, while acting as counsel for TPI, also acted as counsel for the defendants USTC and USTN from the period of time prior, to the signing of the SDA through the exchange agreement ultimately executed by TPI, creating a conflict of interest, and that Gavin conspired with the other defendants to defraud TPI of its license by making misrepresentations, breaches of contract, and conversion, all in breach of fiduciary obligations owed to TPI as its attorney; (6) violation of the Louisiana Code of Professional Responsibility and ABA Model Rules of Conduct— by representing both TPI and USTC’s interests on the same and in related matters during all relevant time periods at issue in this suit, which interests were clearly adverse, and not informing TPI of the conflict of interest; (7) fraud — Gavin fraudulently and illegally signed the application for a STA from the FCC authorizing operation of TPI’s Bakersfield license, without the knowledge or consent of TPI, when the FCC required the consent of TPI, as the license holder; and, (8) conflict of interest — Gavin sent USTC a menu of options for dealing with TPI’s unwillingness to complete the assignment of its Bakersfield license to UST/B, including an option to sue TPI for specific performance, notwithstanding his on-going representation of TPI and without notice to TPI. Finally, TPI alleged that Gavin and Patto.n Boggs are solidarily liable with all other defendants for any and all of its damages.
Having found La. R.S. 9:5605, the libera-tive prescriptive/peremptive statute governing legal malpractice actions against lawyers licensed to practice law in Louisiana, inapplicable to the claims against Gavin and Patton Boggs (neither defendant being licensed to practice law in this state), we must now determine which statute governs prescription of TPI’s claims against them, and then, apply said statute to resolve the prescription issue.
To the extent that TPI’s legal malpractice claim against - Gavin and Patton Boggs contains allegations of negligence, the existence of an undisclosed conflict of interest, misrepresentation, conspiracy, and conversion, (all tort actions), Louisiana Civil Code |22article 3492 provides that a one-year liberative prescriptive period applies to delictual actions. In the revised comments to Article 3492, subsection (b) provides that the notion of delictual liability includes intentional misconduct, negligence, abuse of right, and liability without negligence. Thus, we find the one-year prescriptive period of La. C.C. art. 3492 applies to all tort-based causes of action alleged against Gavin and Patton Boggs. The prescriptive period commences to run from the date injury or damage is sustained. La. C.C. art. 3492. *1072 Notably, the statutes differ in that the period set forth in La. C.C. art. 3492 is prescriptive only; there is no peremption period. Consequently, the application of that statute allows, when warranted, prescription to be interrupted or suspended. (Contrarily, La. R.S. 9:5605 provides a peremptive period, following which the action is extinguished; thus, there can be no interruption or suspension of prescription that extends the filing date beyond the peremptive period of three years set forth therein.)
On remand, once the exception of prescription was re-urged and additional evidence presented, the district court found, based on the new evidence, that TPI received constructive notice that it had been damaged by the acts .of Gavin and Patton Boggs from a USTC letter sent to its shareholders dated March 1, 2002, at the latest, and sustained the exception of prescription because the petition was filed on May 15, 2003, more than one year after receipt of the letter.
The determination of the date that TPI had actual or constructive notice (date of discovery) of facts sufficient to incite its suspicion and attention and imposing a duty upon TPI to conduct a reasonable investigation of whether it had been harmed is a factual finding by the district court. In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety. Cenac v. Public Access Water Rights Ass’n, 2002-2660, p. 19 (La. 6/27/03), 851 So.2d 1006, 1023. Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. The reviewing court should affirm the district court where the district court judgment is not | ^clearly wrong or manifestly erroneous. Hall v. Folger Coffee Co., 2003-1734 (La. 4/14/04), 874 So.2d 90, 98. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. The reviewing court must keep in mind that if the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart, 617 So.2d at 882.
After a thorough and careful review of the evidence contained in the record and the arguments of counsel on appeal, we find the evidence below sufficiently supports the district court’s finding that TPI’s suit was filed more than a year after the date TPI had constructive knowledge of facts sufficient to incite its attention to the potential that a conflict of interest existed due to the dual representation by Gavin, and that it may have been the victim of information withheld from it, actions taken without its requisite knowledge and consent, and acts and omissions intended to mislead and induce it to take certain actions contrary to its best interest and that caused it damage.
• September 14-17, 2001 — an email string between Monahan and Cynthia Carter, discussing their suspicions about Patton Boggs and Gavin’s representation of both TPI and USTC, and whether they should push an “ethical button” concerning it and the conflict of interest created thereby.
• September 21-22, 2001 — an email string between Monahan and Carter and Michael Morrison, concerning Patton Boggs’ conflict of interest.
*1073 • September 28, 2001 — an email from TPI, via Monahan, to the USTC Board of Directors questioning Patton Boggs’ conflict of interest.
• September 29, 2001 — a response email from Roberts (USTC) to Monahan (TPI) clearly indicating that Gavin was representing USTC’s board of directors” (further accentuating the dual representation conflict).
• October 5, 2001 — an email string by which TPI, based on its understanding of Gavin’s representation of USTC (ie., the conflict), now insists that Morrison, TPI’s own lawyer, be included in any- conversations between Gavin and USTC.
hi* TPI’s continued resistance to sign the paperwork required by the SDA to assign its license to UST/B (the new MSE), and TPI’s assertions that its refusal to proceed was based on USTC’s withholding of pertinent information and a lack of response to TPI’s requests for such information.
• November 7, 2001 — a letter from Gavin to Monahan, through Morrision, requesting that TPI quit delaying the . process and formally assign its license as required. Same date, a letter from Gavin to Monahan, among other things, reiterating that Patton Boggs . was not representing TPI regarding the acquisition of its license, but rather, Patton Boggs was representing USTC.
• November 8, 2001 — Monahan response to Gavin’s email and letter, (áfter discussing and reviewing response with Carter and Morrison) by email to Gavin and cc’d to the USTC Board that alleges “gross negligence” and “collusion” by Gavin and USTC.
• Monahan testimony at hearing that, after the above mentioned allegations were made, she had no basis to rely on anything further from Gavin.
• March 1, 2002 — a letter to USTC’s stockholders (including Monahan and Carter), explaining that the Board was making fundamental changes to the company, adjusting to the reality of capital formation in 2002, and calling for caution and restraint. The letter also notified stockholders that almost every wireless and broadband telecommunications provider and supplier were rewriting their business plans; that three providers had already filed or were filing for bankruptcy protection, and that the number of layoffs in the industry exceeded one million. USTC informed that it had defaulted on 40 of the 126 FCC licenses, and it was seeking to restructure or reduce the obligations of the 86 licenses remaining in its control. The letter finally advised that if USTC was unable to reduce or restructure the debt owed on those 86 licenses, it would likely not provide funding for additional licenses.
• March 9-10, 2002 — an email string from Morrison to Monahan and Carter after receipt of the above referenced letter, in which he states; “The release of | ^[markets] sounds ominous to our bottom line value; am I missing something? Have we been defrauded? [Should] we renegotiate now? Do we stay the course?” (Emphasis added.)
• Despite the foregoing, TPI did nothing to further investigate its suspicions (stating it did not trust USTC officials) or further investigate the distressing ' news in the stockholders’ letter regarding USTC’s declining financial condition. On March 25, 2002, Morrison emailed Carter his assessment that there was really no chance for *1074 TPI to make money with the USTC crowd.
• May 3-6, 2002 — emails documenting that TPI received notice that several MSE/license holders had filed bankruptcy.
Notwithstanding TPI’s knowledge of the foregoing evidence, TPI maintains, as it did in the hearing on the first exceptions filed, that it did not know it may have a cause of action for Gavin and Patton Boggs’ participation in wrongdoing against it until it received a phone call from a fellow USTC stockholder in July 2002, informing TPI that USTC was in dire financial straits and had released many of the licenses it held. Thus, it maintains that its suit, filed on May 16, 2003, was timely as it was filed within one year from the July 2002 phone call.
Based on the evidence detailed above, we do not find the district court manifestly erred in concluding that TPI had constructive knowledge, at the latest, on March 9, 2002, when it received the letter to USTC’s stockholders, clearly outlining USTC’s mounting financial difficulties and its inability to proceed as planned with the licenses. Moreover, the record supports the district court’s observation that TPI “had knowledge as early as September, October, November of 2001, but clearly, by March of 2002, they had knowledge.”
The district court additionally articulated in its reasons for judgment that TPI had again failed, as noted in TPI 3, to sufficiently allege fraud or breach of fiduciary duty as to Gavin and Patton Boggs. Although only issues related to prescription have been raised in this appeal, because the prescription applicable to causes of action in fraud and/or breaches of fiduciary duty can be subject to interruption, suspension, and/or contra non |2ñvalentem, it is necessary to determine whether the district court’s finding that TPI failed to sufficiently plead and prove fraud and breach of fiduciary duty was manifestly erroneous, before resolving the issues of prescription. Having reviewed the entire record, including the supplemental and amending petitions, we find the district court’s conclusion as to those two causes of action to be supported by the pleadings. Accordingly, the only causes of action remaining and subject to a prescription determination in this matter are all delictual actions within the ambit of La. C.C. 3492. Subject to the statutory one:year period, these actions, filed more than one year from the latest date of TPI’s discovery of facts .sufficient to apprise it that it had been wronged and warranted an investigation, are prescribed. The record reveals that TPI did not investigate, or file suit until well after one year following receipt of the stockholder’s letter, confirming its expressed concerns and suspicions as to whether they had been misled by acts and/or omissions by the defendants.
CONCLUSION
For the foregoing reasons, we find no manifest error in the district court’s decision, sustaining Gavin and Patton Boggs’ exception raising the objection of prescription, finding all of TPI’s claims against them were prescribed prior to TPI filing suit, and dismissing TPI’s claims against Gavin and Patton Boggs. Accordingly, the September 24, 2016 judgment is hereby affirmed; costs of this appeal are assessed to the plaintiff, Trans Pacific Interactive, Inc,
AFFIRMED.

. That judgment also denied TPI’s motion seeking leave of court to file a fourth amending petition; however, -that ruling is not at issue in this appeal.

. Although the district court certified the judgment as final, presumably in compliance withthe requirements of La. C.C.P. art. 1915.-B(l), we note that this judgment dismisses two of the parties in full, rendering it a final appealable judgment without the necessity of certification, pursuant to La. C.C.P.' art. 1915.A.

. In April 1996, Besozzi, Gavin, and Craven merged with Patton Boggs, which continued to provide legal representation to TPI.

. The valuation of the IVDS licenses was primarily based on the population potentially to be reached by use of the radio bandwidth in the license, known as "Points of Presence” or "POPs”.

. This amending petition, and the documents attached, comprises one entire volume of the record before us'on appeal.